Our next case is ATOS v. Allstate again, 2023, 1621, and 1849. Mr. Unikowski again. Thank you, Your Honors. So, right now I'd like to turn to Judge Reno's question about vehicle-independent states. I appreciate your indulgence in giving me some time to get there. There was a claim construction dispute on this issue, and we respectfully believe that the board erred in its construction of the claim term. The claim construction dispute boiled down to whether the device has to be inside the vehicle at the time of the vehicle-independent state. So, ATOS construed vehicle-independent states to mean a state that is the result of movement of a portable device within the vehicle, independent of or unrelated to the movement of the vehicle. And so, I think that ATOS's construction is supported both by the plain language of the claim, as well as the specification. So, to begin with the claim language, there's a number of clues that vehicle-independent state requires the device to be in the vehicle. So, first of all, there's just the word vehicle in vehicle-independent state. And so, there's this question of which vehicle? And I think the natural answer is, it's the vehicle that the device is in. That's the vehicle that the device is independent of. And I think when you juxtapose vehicle-independent state with the next limitation, vehicle-dependent state, that becomes even stronger. The whole concept of a vehicle-dependent state is that the device is doing what the car is doing. So, it's falling because the car is turning. So, for a vehicle-dependent state, the device definitely has to be in the car. And so, it makes sense to say that in the vehicle-independent state, the device is also in the car. And then I think if you just work through the different claims, I believe there's actually an express statement in sublimitation A about the vehicle, excuse me, about the device being in the vehicle that's linked to C. So, if you work through this, if you just start with A, A refers to an operation indicator being created when the portable device is inside the vehicle. So, you have the operation indicator there. And then B detects when the, at least one operation indicator, that's a reference to A, meets one or more predetermined criteria. Yes, your honor. Don't subparagraphs B and C depend on A? Yeah, that's our argument. Yes, your honor. Okay, it doesn't make any sense to, if you take out A, B and C would not make any sense standing alone. Correct. That's your argument. That is our argument. And yes, that is our argument with respect to the interlinkage between those three elements. And so, A refers to the device being in the car, and then you go down to C, and then it says a vehicle independent state. So, the state is independent of the vehicle in which the device is located, as described by A. So, that's why we construtely believe that vehicle independent states should require that the vehicle at issue is the vehicle the device is in. I think there's tremendous support, excuse me, your honor, did you have a question? Why doesn't what's shown in step 5C, which I think we're kind of walking through, or you're walking through, Judge Reina, some of the steps, why doesn't that allow the vehicle independent state to be determined when the user is outside the vehicle? Well, I think that the, because then it wouldn't be independent of the vehicle that it's inside. I think that the referenced vehicle in the phrase vehicle independent states is the vehicle in which the device is located. And A refers to the portable device being located inside the vehicle, and it's a link to the operation indicator, which is linked to the predetermined criteria. So, I think that these predetermined criteria in C are measured at a time, or analyzed at a time when the portable device is in the car, which is in A. So, I think there's a temporal linkage between A and C, and so if the device is in the car in A, it has to also be in the car in C. But that's only one of the several reasons I think you'd construe it this way. I think that just the word vehicle and vehicle independent states implies a reference vehicle, and the only sensible answer to that is the vehicle that it's inside of. I think there's also just tremendous support from the specification that our interpretation is correct. It's so clear in the specification, the whole point of this invention is to reduce the risk of erroneous driving events by figuring out whether when you've dropped your phone, or your phone moves around, whether it's because the car has done something, or it's whether you've done something in the car, which implies that the device is independent of the vehicle in which the device is located. So, if I could direct the court to column one, that's appendix 58, the specification says, it's important to be able to detect vehicle-dependent states. What appendix P can I, I apologize. Sorry, appendix 58, it's at the back of the blue brief. And it's in column one. And you'll see, starting at line 38. 38? Yes. It says, in order to detect, excuse me, in order to provide a driver evaluation service or enhanced automatic detection of driving capabilities, it is important to be able to detect vehicle-dependent states, such as cornering, accelerating, and braking. So, that's the phone detecting those states. So, the phone is definitely in the car then. And then it says, while also recognizing vehicle-independent events, movement caused by the user handling the phone, phone falling to the ground, et cetera, in order to eliminate or significantly reduce the chances of erroneous driving events being registered. In other words, so, the invention is able to distinguish movement of the car from just dropping the phone on the ground or moving it in your pocket. So, the device doesn't think there's been a car accident just because you've dropped your phone. That's the purpose of this invention. And we're seeing the phone falling to the ground. Are you talking about inside the car? In the car, yeah. Or falling out of your pocket. Or falling to the ground outside. You're talking about inside the car. That's right. So, it's even clearer, actually, if you look at column four. That's on appendix 59, starting at line 32. So, the ability to differentiate between vehicle-dependent and vehicle-independent events are crucial for any kind of driver evaluation because it is common for most users to pick up their phones during driving or for the phone to get knocked to the ground, which could potentially cause erroneous driving events to be reported. So, again, the whole point of this invention is, while someone is driving, they might drop their phone. That's an event that's independent of the vehicle in which the device is located. And so, I think that that informs what the phrase vehicle-independent states means. So, the other issue we've raised in our primary appeal is this operation indicator question, which I think was fully litigated in the last round. So, I don't have anything further on that unless the court has additional questions. Just to clarify, I assume then you're saying that the same basis you raised in the prior appeal, the 1619 appeal, would apply here on operation indicator? That's correct, yes. So, I'm happy to turn to the questions in the cross-appeal. Ordinarily, I'd go second, but I'm happy to start with that immediately. You may do that. Okay, or whatever the court prefers. I have some more time, so I might as well. It's your argument. Okay. So, I'll just, let me get to the two questions that were raised on the other side. So, the first was this question of rotation vector. So, this is an issue on which the board adopted the claim construction that was proposed by Allstate, but still concluded that the prior art, which was a physics textbook, did not disclose a rotation vector. That's a decision that's reviewed for substantial evidence, and we respectfully submit that the board's decision was correct on this issue. So, the construction that was adopted was that the method of detecting the condition, oh, excuse me, the construction that was adopted was a vector that describes the motion of a body that is rotating around a point. That's the construction that Allstate proposed. That's the construction that the board adopted. And the board concluded that the physics textbook does not disclose that because the angular momentum vector, which was in the physics textbook, does not distinguish between a body that's rotating and a body that's going in a state line. So, it's useless for detecting the condition of a vehicle turning. And so, the board gave a number of reasons for that, which was well supported by expert testimony. The board noted that the rotation vector, the angular momentum vector does not describe the angle, so it doesn't say how much something has rotated. As I said, it doesn't distinguish between a rotation and a straight line. Also, it has no physical meaning whatsoever in the context of vehicle motion because it's not even inherent to an object. It requires a completely arbitrary choice of a point of origin. So, it doesn't describe the motion of a body rotating around a point, which was the construction that Allstate proposed. And so, I think the board very reasonably construed the prior art not to disclose a rotation vector under that construction. And in my remaining time, just to speed this up, I'll also get to the second issue in the cross appeal, which has to do with the proper construction of movement vector. So, I think that the crucial point in this case is that a movement vector does not have an ordinary meaning. It's a coined term. And there's a finding from the board on this. You'll see at appendix 15 in the 174, neither party argues that the term has an ordinary meaning to persons of ordinary skill in the art. And so, I think in that context, it's quite natural, and this court's cases say, that one should look at the intrinsic evidence, in this case, the specification, to figure out what this made up term means. And then the specification says it's a vector that's derived from the cross product of the centrifugal force vector and rotation vector, and that's the construction the board properly adopted. Does this argument, though, rely on lexicality? Yeah, I think that's what the board concluded. I mean, I think that the right way to think about it is because there's just no ordinary meaning, the only way to figure out what it means is to look at the specification, especially when we're talking about this mathematical object. It doesn't really make sense to say that this very specific mathematical object can really be a vector that indicates movement in any way whatsoever, as all state argued, which could really be a wide variety of different types of vectors. I think the board properly said that this precise mathematical construct should be given a precise meaning, and the intrinsic evidence tells you exactly what it is. So, on that issue, we believe the board should be affirmed. Did you argue to the board, the arguments you're making today about the device falling to the ground as being a vehicle-independent movement? Yes, we did, Your Honor. I'm happy to direct the court to the Galvey version of the board's decision. Did you make the argument that your argument depended on ground being the floor of the vehicle? Yes, I think you'll see in Appendix 22 to 24, I think we make these arguments in some detail. So, Appendix 22, where the board is summarizing our argument, it says, patent owner responds that the main premise of the 174 patent is to distinguish between different types of movement that occur while a portable device is inside a vehicle, and argues that the purpose of the invention to eliminate or significantly reduce the chances of an erroneous driving event being registered only applies if the vehicle-independent events occur while the device is in the vehicle. So, that's really what I'm arguing to the court this morning and the next sentence, again, explains our argument, which is very similar to what I'm telling today. So, yes, I think the board probably understood that we were making this argument, and I'm renewing the argument that we raised in the board. And you are now into your battle time. Thank you, Your Honor. Still live. Thank you, again, Nathaniel Love for Allstate. I'll start with your question, Judge Arena. As you heard, the passage that he read to you did not summarize the argument that they made today that ground in the patent meant the floor of the car. As we said in our briefs, they did not make that argument before the board. In the passage he just read to you, they weren't making that argument either. It wasn't made below. On the rest of vehicle-independent states, the board's construction should be affirmed, and the additional requirement within the vehicle should not be added. The board found that falling to the ground is vehicle-independent movement, and the phone may be outside of the vehicle. That's correct. That's a factual finding about what's disclosed in the patent that is correct. You know, counsel started with vehicle-independent, and the idea that that phrase must then specify a vehicle. The whole idea of independence is it's independent of any vehicle. And so the notion of a vehicle-independent state in and of itself doesn't require that some specific vehicle necessarily exist. The other specification support that counsel did not address, but absolutely supports the board's construction, is in the 140 patent. And the reason the 140 patent is relevant is that at column one of the 174 patent, the inventors chose to incorporate, by reference, all of the disclosures from the 140 patent about vehicle-dependent states and vehicle-independent states. And it called the 140 patent the state disclosure for everything the 140 patent says about vehicle-independent states. And the 140 patent talks about the user walking with the phone, shaking the phone, as contrasted to vehicular movement. That's at appendix 74 in column two, lines 16 to 20 of the 140 patent. It also talks about other states where the user is, quote, outside the car. That's at appendix 74, column two, line 27 to 28. And at column five, at appendix 76, lines 34 to 35, the patent describes taking measurements when the portable device is not in the vehicle. Individual walking with the device. Calls that one of the states of interest. So the 140 patent consistently and repeatedly talks about a vehicle-independent state, a state of the user outside of the car doing something else with the device as something of interest. There's a suggestion in their briefing that the 140 patent was somehow irrelevant to this term. I don't see how that's a tenable position to take based on what the 174 patent says about the 140 patent and what is specifically being incorporated from it. I want to address this argument about the other claim language and how limitation 5A goes through to limitation 5C. So what they're arguing now on appeal is that the term should be construed to include the requirement of within the vehicle, within 5C, vehicle-independent states in 5C. That's a claim construction argument. They did not make that claim construction argument below. It was advanced for the first time in their briefing here. And in response in the papers, they tried to point to something that happened at the hearing conceding that they didn't raise it in their papers, which they didn't. But what they argued at the hearing was, and I'll point the court directly to what they're citing, 625 in the appendix, lines 21 through 22. What Counts was arguing, he was saying even if all states' construction is correct, he had a position, so the construction of this term. So even under a construction of vehicle-independent state, without the requirement of within the vehicle, he had an argument that based on 5A, the Schwartz reference, which was at issue, would not anticipate. What was the page you just described? I wanna make sure I have it. 625, lines 21 through 22. So they were never arguing that claim 5A should inform the construction of this term in claim 5C. That was never made before the board. But taking that out in a minute, it doesn't actually support the claim construction. And that's because 5A is talking about when you determine an operation indicator. And the last step, 5C, is talking about determining a vehicle-independent state. There is no requirement that those things be determined at the same time. It is entirely possible an operation indicator could be determined while the device is in the vehicle, the user gets out of the vehicle, and a vehicle-independent state is determined at that time. So it doesn't even go anywhere. I'd like to move to, if there's no other questions on that, I'll move to. So it sounds like you disagree with their temporal argument. Is that fair to say? Yes, yes. We believe it's untimely and can't be raised. But on the merits of it, it's just wrong. The claim language doesn't require that. So the first issue in our cross-appeal is rotation vector. And we agree, this is a substantial evidence question, but it's kind of a unique one. Because the board adopted our construction and then went on to find that the prior reference we offered did not disclose it. So it's sort of an unusual circumstance. The board's findings about Kleppner. Kleppner discloses, the physics textbook, discloses a vector that it calls L. L is a rotation vector, as the petition explained, because it describes the motion of a body that rotates around a point. That's the board's construction. The board made findings about Kleppner that confirm that. And those are in appendix 26, where the board is citing to the key passage of Kleppner, which is in appendix 1112. That's the part of Kleppner that has the figures, that show the plane and the object rotating, turning in the XY plane. And then you've got L, which is a vector which points upward if the vehicle is turning to the left. And it points downward if the vehicle is turning to the right. It is one of the many instances in physics of the right-hand rule. And that observation of a rotation, the direction that a rotation vector points for a turning object in the XY plane is all you need for the rest of this claim, which has very few words in it and simply says, you're detecting the condition of a vehicle turning by comparing that rotation vector to the direction of gravity. So if it's the same or it's exactly opposite, you're turning. That was the entire point of the petition. And L, this example in Kleppner, meets the board's claim construction because it describes the motion of that body. It's turning left or it's turning right, based on the direction of L. So there is substantial evidence from Kleppner itself showing that the claim construction is met. And there's actually no evidence on the other side showing that somehow Kleppner doesn't disclose what the claim construction requires. What the board did was distinguish Kleppner based on a series of requirements that are not in the construction, and including a misinterpretation that its own institution decision warned against. There's four of them, and they're spelled out in our brief, and I can go through them, touch on them quickly. The first one was this idea that L is defined with respect to its point of origin. It doesn't describe an angle. It has particular units. The construction doesn't require any particular units. The construction doesn't require a particular point of origin. And the construction also doesn't require describing an angle. But of course, L does describe an angle. That's the whole point of what Kleppner is showing on page 1112 of the appendix. It is showing this perpendicular vector to the plane of rotation. The second point the board tried to make, this is at appendix three, that angular momentum can't be used to distinguish between an object turning and an object moving in a straight line. So this is one of the several points where the board pivots from going to what, from what Kleppner actually discloses, which is sentences and words and pictures showing a vector L that meets the claim construction, and instead pivoting to expert testimony that Atos offered about angular momentum generally. And the fact that even though we're often talking about angular momentum for a rotating object or an object that is turning, it is defined at all times. You can define it in other settings. But the construction of this term doesn't require the ability to differentiate between an object turning and an object moving in a straight line. It's simply not in the construction. And it's not a basis for the board to say, as it did, that L doesn't meet the construction. The board went on to say angular momentum is not inherent to an object. Its computation requires an arbitrary choice of a point of origin. Again, that's not in the construction. And what Kleppner shows is not arbitrary. Kleppner shows L drawn through the origin around which the object is rotating. Again, the board is talking about angular momentum generally. It's not talking about what this prior art reference shows you, literally shows you a picture of what the vector which describes the motion of this turning object looks like. That was the question before the board, whether this disclosure matched the claim construction. The last point of distinction the board made was about the gravity vector. The board seemed confused about whether or not the gravity vector, which is a separate part of the claim, should be considered as part of the claim construction of rotation vector. Of course, the claim construction doesn't mention the gravity vector, so this has nothing to do with whether or not L meets the claim construction. What the board was discussing was the expert's point that Kleppner discusses the gravity vector in a separate chapter of the book, which is not surprising given that it's a physics textbook. But it's the same reference, and the reference discloses both of these vectors and where they point. Regardless of that, where the gravity vector appears in Kleppner is not a basis to say that L doesn't meet the claim construction of rotation vector. So we believe the only evidence, which is the board's own interpretation of Kleppner, which is at appendix 26, and cites to 11.12, shows that L meets the construction of rotation vector and the court should vacate and remand. And then I'll turn to movement vector. So claims three and four require estimating the angle between a speed change vector and a movement vector. Again, these are just basic vectors describing the motion of objects. Vectors are arrows, a movement vector. The direction tells you which direction the object is going. Often the magnitude would show you perhaps the velocity. So you would disagree that lexicography applies for movement vector, is that true? I'm sorry, disagree with? Would you disagree that lexicography would apply for movement vector? I absolutely disagree. And the history of this is important. There's a suggestion in the brief that we somehow agreed that this term lacked plain and ordinary meaning. But that's not what happened. Our petition did not offer a construction of that term. And what that means in the IPR context is, everything we're not offering a construction for is getting plain and ordinary meaning. That was our position. In their response, they advanced a construction. And so in reply, we said, we don't think that construction is right. We think it's unsupported for all the reasons we have in our briefs here. But if a construction is necessary, it's the plain and ordinary meaning, which means a vector indicating the direction of movement of the object. It's not, as they say, any vector having anything to do with movement. It's a vector that points in the direction of movement. And this claim is all about comparing angles of vectors. And all you need to do that is, all you need in order to compare the angles of two vectors is to know the direction. The magnitude won't matter. If we agree with you on your arguments related to movement vector, what are you seeking in terms of our brief? Are you seeking that we say, your proposed term of construction is right? Are you seeking that we see the back of the T-tab and don't provide a proposed construction? Or what are you seeking? They can agree, then, with the instruction to adopt the plain and ordinary meaning, which is a vector indicating the direction of movement of an object. The lexicography decision, really there's no effort to defend it in their briefs. There's no words that manifest exclusion and restriction. Nothing that this court's precedents require. It's permissive. It can be defined this way. But it is not required. The only attempt they make to defend it is to say that it tracks the specification. But in any instance where lexicography is improperly evoked, you found something in the specification, so it's consistent with it. The question is whether that should be adopted as a definition. And it's also part of the argument is when they did intend to in these set of patents want to define something, they did it in a very different way than the language that's being pointed to here for movement vector. They did. They did that multiple times. They used the phrase, as used herein, X means, and then they defined terms. And they didn't do that here. They used the permissive language here. The only other piece of evidence they offered was this expert testimony, which they say, suggest in their brief, required this construction. If you look at what the expert said, that's at appendix 1384 to 83 to 84, paragraph 53 of their expert's declaration. All he was saying was the invention could work using this construction. He did not say it could only work or had to use this particular claim construction. It wouldn't otherwise work. So, I'm a little unclear on whether reserving rebuttal time is appropriate because counsel already addressed the cross- You may reserve it, but you will not have an opportunity to use it if opposing counsel does not deal with the cross-appeal issues. If it does, you may respond. Thank you. Mr. Unikowski. Thank you, Your Honor. So, just a few points, Your Honors. First of all, on this question of vehiclable independent states and the allegation that we forfeited an argument. So, first of all, I think that the concept of forfeiture is not even meaningful here. As we pointed out in our reply brief in the other appeal, this court has held that as long as you're advancing the same construction and imperatives in this court, you're allowed to rely on any portion of the intrinsic evidence that you wish without being accused of forfeiture. That's exactly what we're doing. But regardless, I don't even understand these very hyper-technical forfeiture arguments. You'll see on it, with regard to the device falling on the ground, on Appendix 23, the board actually quotes our argument about, you know, where we quote the language in the specification, vehicle independent state, movement caused by the user handling the phone, phone falling to the ground. And then later on Appendix 23, the board responds to that by saying, no, falling to the ground implies that the phone may be outside a vehicle, not inside. So, we're just disagreeing with the board's decision, which in turn addressed our argument about the phone falling to the ground. Meanwhile, on Appendix 24, there's a whole paragraph addressing the linkage between A and B and C, which is a very complicated argument that we were making by, I'll say that we were making a slightly different argument in the board. I don't think that's true, and the board certainly didn't see it that way. There's a whole paragraph on 24 addressing the exact argument I made to the court this morning. I want to just clarify something, because I'm not sure if I misunderstood when we were talking earlier. When we were talking earlier about 5C, I thought you said that falling to the ground meant the floor of the car, but now I feel like I'm hearing falling to the ground means the ground outside. No, the car, yeah, the ground in the car, that's what I'm referring to. So, C doesn't refer to the ground, that's just a discussion in the specification, talking about the phone falling to the ground, but I think that when the specification is talking about phone falling to the ground, it's talking about the ground of the car. You know, I don't think it's the ground in like the earth. You know, and, okay, so that's what I think what this is referring to. And I think if you just look at the rest of the specification, in which it explains the whole point of this invention, is so the phone can tell whether the reason it had an event was because the car was doing something or because the phone was doing something. Like, it's the ability to distinguish the movement of the car from the movement of the phone, which is only useful when the phone is in the car. That's what it means to be vehicle-independent state. The phone is moving independent of the vehicle that it's inside of. That's the vehicle that it's independent of. So, I see my time has expired. I'm happy to address any other questions about rotation or movement of vector if the panel has any. Well, your time has expired. Thank you, counsel. And Mr. Rose, there's no opportunity for a battle. Case is submitted.